David W. MATTHEWS and Christa Matthews, Ronald Davis and Marie Davis, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 89–1423.

United States Court of Appeals, District of Columbia Circuit.

Argued April 16, 1990.

Decided July 3, 1990.

Gerald A. Kafka, Washington, D.C., for appellants.

Mary Frances Clark, Atty., I.R.S., with whom Gary R. Allen and David English Carmack, Attys., I.R.S., Washington, D.C., were on the brief, for appellee.

Before SILBERMAN, SENTELLE and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

David W. Matthews ("Matthews") and Christa Matthews and Ronald Davis ("Davis") and Marie Davis (collectively "appellants") appeal from a decision of the United States Tax Court, *Matthews v. Commissioner,* 92 T.C. 351 (1989). Appellants raise several challenges to the decision of the Tax Court, which held that because it was paid to "employee[s] of the United States or ... agenc[ies] thereof," income Matthews and Davis received from nonappropriated fund instrumentalities was not excludable under section 911(a) of the Internal Revenue Code. I.R.C. § 911(b)(1)(B)(ii) (1988). Because we find none of appellants' arguments persuasive enough to overcome the narrow construction given exclusions from taxable income, we affirm.

## I. BACKGROUND

All of the facts are stipulated and undisputed. During the taxable years in question, 1983 and 1984, both Matthews and Davis worked for nonappropriated fund instrumentalities ("NAFIs") associated with the Morale, Welfare, and Recreation system of the United States Army in the Federal Republic of Germany. These NAFIs are partially self-supporting, quasi-governmental organizations that provide services to military personnel. Matthews and Davis were paid exclusively from funds not appropriated by Congress.

Section 911(a) of the Internal Revenue Code allows United States citizens residing and working abroad to exclude foreign earned income from United States income taxation. "Foreign earned income" does not include amounts "paid by the United States or an agency thereof to an employee of the United States or an agency thereof." I.R.C. § 911(b)(1)(B)(ii). It is uncontested that for purposes of section 911 the employing NAFIs are agencies of the United States.

## II. ANALYSIS

■ Prior to 1981, the language limiting section 911 excludability referred to amounts "paid by the United States or any agency thereof." I.R.C. § 911(a)(1) (Supp. IV 1980). In 1981 the Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, § 111, 95 Stat. 172, 190 (1981) ("ERTA"), broadened the section 911 exclusion of foreign earned income by narrowing the definition of amounts not included in foreign earned income (and consequently ineligible for the exclusion). ERTA changed "paid by the United States or an agency thereof" to "paid by the United States or an agency thereof *to an employee of the United States or an agency thereof."* *Id.* (emphasis added).

The parties concede that the NAFIs are agencies of the United States and that each appellant was paid by an agency of the United States. Thus, the sole issue is whether Matthews and Davis were "employee[s] of the United States or an agency thereof." I.R.C. § 911(b)(1)(B)(ii). Appellants concede and the Tax Court held that Matthews and Davis were common law employees.[1] Appellants challenge the Tax Court's use of the common law definition of "employee." It is uncontested that except for the question of their status as employees, appellants are otherwise qualified individuals and would be entitled to the exclusion.

Appellants advance two lines of argument. First they argue that Congress intended to benefit NAFI personnel when it passed the ERTA changes to section 911. Second, they contend that treatment of NAFI personnel as other than employees of the United States elsewhere in the law requires similar treatment under section 911.

### A. Legislative Intent

The 1981 changes to section 911 widened the availability of the exclusion for foreign earned income by narrowing the exception to the foreign earned income exclusion from amounts "paid by the United States" to amounts "paid by the United States ... to an employee of the United States."

Section 911 does not define "employee" nor does any other provision of Subtitle A, Income Taxes, of the Internal Revenue Code (Title 26, U.S.C. § 1 *et seq.*). In the absence of an indication that Congress intended a novel meaning, words of a statute are presumed to have their ordinary and usual meaning. *United States v. Stewart*, 311 U.S. 60, 63, 61 S.Ct. 102, 104, 85 L.Ed. 40 (1940). Thus because no definition for "employee" is included in the Internal Revenue Code, courts have looked to the common law for the accepted meaning of the word. *See United States v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947);

*Professional & Executive Leasing v. Commissioner*, 862 F.2d 751 (9th Cir.1988); *Azad v. United States*, 388 F.2d 74 (8th Cir.1968). Because this term is important to so many issues—*e.g.*, tax withholding, vicarious tort liability, and application of labor statutes—"employee" has been the subject of extensive judicial discussion. Appellants concede that under the test developed in the enormous body of common law employment decisions they are employees.

A plain reading of the 1981 statutory change gives no indication that the legislators envisioned applying other than the common law test for "employee." Indeed the most natural reading of the intent of the legislation depends on the distinction between common law employees and independent contractors. The obvious beneficiaries of the 1981 extension of section 911 were qualified individuals who were independent contractors working for the United States. Under the prior law, income that would otherwise be foreign earned income for those independent contractors would not qualify for the exclusion because of the exception for income "paid by the United States." After 1981, the same income would qualify for exclusion because the income, while paid by the United States, would not be paid to "an employee of the United States." The 1981 changes were expansive, but nothing indicates that employees of NAFIs were beneficiaries of this broadening.

The Conference Report, the only relevant piece of legislative history, gives no indication that appellants should benefit or that other than the common law definition of "employee" should apply to section 911. H.R.Rep. No. 215, 97th Cong., 1st Sess. (1981), U.S. Code Cong. & Admin. News 1981, pp. 105, 285. The Conference Report states that "the bill extends the exclusion to certain overseas independent contractors and teachers at certain schools for U.S. dependents who are not employees of the

---

1. The Tax Court defined the common law employer-employee relationship by stating that " 'the crucial test lies in the right of control, or lack of it, which the employer may exercise respecting the manner in which the service is to be performed and the means to be employed in

its accomplishments, as well as the result to be obtained.' " *Matthews*, 92 T.C. at 361 (quoting *Reed v. Commissioner*, 13 B.T.A. 513 (1928), *rev'd and remanded*, 34 F.2d 263 (3d Cir.1929), *rev'd per curiam*, 281 U.S. 699, 50 S.Ct. 352, 74 L.Ed. 1125 (1930)).

U.S. or any agency thereof." *Id.* at 204, U.S. Code Cong. & Admin. News 1981, p. 295. Appellants argue that the "teachers" language demonstrates that common law employees were to fall outside of the reworked exception to the exclusion. At the outset, this ignores that the whole phrase reads, "teachers ... who are not employees of the U.S. ..." *Id.* Read in the context of the whole sentence it is obvious that the "teachers" language gives no support to appellants' argument that Congress intended a novel definition of "employee." Indeed the language reflects a common understanding of "employee" by qualifying "teachers" with reference to "not employees of the U.S."

Nevertheless, appellants argue, the reference to teachers is meant specifically to overrule two pre-ERTA decisions holding that amounts paid to teachers (NAFI personnel) were not excludable. *Kalinski v. Commissioner,* 64 T.C. 119 (1975), *aff'd,* 528 F.2d 969 (1st Cir.1976); *Taylor v. Commissioner,* 30 T.C.M. 233 (1971). Even if appellants are correct about that purpose, which we cannot accept given that appellants offer no support for their contention, it is a considerable jump to the conclusion that Congress meant to exclude all NAFI personnel from the section 911(b)(1)(B) exception. The appellants fall within neither of the categories mentioned in the Conference Report—independent contractors or teachers who are not employees. The plain language of the statute indicates that Matthews and Davis, as common law employees of the United States, are not entitled to the exclusion.

B. *Other Treatment of NAFI Personnel*

Appellants point to the treatment of NAFI personnel as other than employees

of the United States in other, nontax circumstances. They base the claim that they should likewise be considered other than employees of the United States for purposes of section 911 on the *in pari materia* principle of statutory construction. *See Sutherland Statutory Construction* § 51.01 (Sands 4th ed. rev. 1984),[2] and on the claim that this demonstrates congressional intent. Neither of these approaches succeeds. The treatment of NAFI personnel in the other contexts appellants cite is always for particular, limited nontax purposes, and thus these instances are not *in pari materia* with section 911. The wide range of treatments given NAFI personnel in various contexts demonstrates that had Congress sought to impose a special definition of "employee" in this case it would have done so explicitly.

5 U.S.C. § 2105(c) treats NAFI personnel as other than employees of the United States for a variety of civil service purposes.[3]

An employee paid from nonappropriated funds of the Army and Air Force Exchange Service, Army and Air Force Motion Picture Service, Navy Ship's Stores Ashore, Navy exchanges, Marine Corps exchanges, Coast Guard exchanges and other instrumentalities of the United States under the jurisdiction of the armed forces conducted for the comfort, pleasure, contentment, and mental and physical improvement of personnel of the armed forces is deemed not an employee for the purpose of—

(1) laws (other than subchapter IV of chapter 53 of this title, subchapter III of chapter 83 of this title to the extent provided in section 8332(b)(16) of this title, and sections 5550 and 7204 of this

---

2. Appellants cite Rev. Rul. 60–36, 1960–1 C.B. 279 as an instance in which the Commissioner looked to another statute to interpret section 911. The Commissioner reasoned that the Red Cross was not an instrumentality of the United States and that its personnel were able to exclude their foreign earned income because 10 U.S.C. § 2602 treated Red Cross personnel as other than employees of the United States for purposes of a particular nontax statute. Likewise, appellants assert, the IRS and the courts should look to the treatment of NAFI personnel elsewhere to determine their tax treatment.

3. The laws listed in the parenthetical to section 2105(c)(1) as exceptions to the general rule that NAFI personnel are deemed not employees for purposes of the civil service laws are: prevailing rate systems laws, compensation for working on Sundays and other overtime work, and laws barring discrimination. Additionally NAFI personnel are deemed not employees of the United States for civil service workman's compensation law and for a federal safety program.

title) administered by the Office of Personnel Management; or

(2) subchapter I of chapter 81, chapter 84, and section 7902 of this title.

This subsection does not affect the status of these nonappropriated fund activities as Federal instrumentalities.

Section 2105 was passed in response to *Standard Oil Co. v. Johnson*, 316 U.S. 481, 62 S.Ct. 1168, 86 L.Ed. 1611 (1942), which treated Army Exchanges as exempt from state tax. H.R.Rep. No. 1995, 82d Cong., 2d Sess. 2 (1952). Following some administrative confusion about the proper treatment of NAFI personnel in light of *Standard Oil*, section 2105 standardized and codified the treatment of NAFI personnel as other than government employees for purposes of civil service laws and regulations. *Id.*

The wording of section 2105(c) makes clear that application beyond the terms of this section is inappropriate. Section 2105(c) states that "an employee ... is deemed not an employee" for certain specified purposes. 5 U.S.C. § 2105(c). The initial recognition of "employee" status deflates any claim that section 2105(c) confers a general nonemployee status. Moreover, the patchwork of applications of the deemed status indicates that the drafters intended specific, limited use of this definition. Where Congress has so specifically directed when to use a particular definition of "employee" it would defeat the legislative purpose to infer a broader application.

During the years relevant for this case NAFI personnel were treated differently for FICA purposes than those civil service employees who were covered by statutory retirement plans. I.R.C. § 3121(b)(6)(A) (1982). However, section 3121(b) gave varying treatment to a wide range of persons in the employ of the United States or its instrumentalities. *See, e.g., id.* § 3121(b)(6)(C)(i) (excluding from "employment", *inter alia,* service by the President); *id.* § 3121(b)(6)(B)(ii) (including within "employment," *inter alia,* service by Federal Reserve Bank employees). Thus it is impossible to conclude from this section that NAFI personnel were generally to be considered other than employees of the United States. This is especially the case because section 3121 ultimately stated that service performed by NAFI personnel was not excluded from "employment" for FICA purposes. I.R.C. § 3121(b)(6)(A) & (B)(iv) (1982).

I.R.C. § 3122 requires the Secretary of Defense to collect FICA taxes on persons working for "an instrumentality of the United States subject to the jurisdiction of the Secretary of Defense, at installations of the Department of Defense for the comfort, pleasure, contentment, and mental and physical improvement of personnel of such Department," and during the relevant years authorized the Secretary of Defense to determine whether such service was "employment." I.R.C. § 3122 (1982). The Secretary apparently determined that this service was employment and accordingly withheld taxes. First Stipulation for Trial, ¶¶ 14–15, 36–37 (March 4, 1988) (Joint Appendix H, 5–6, 10).

I.R.C. § 3121(d) defines "employee" as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." Although this definition applies only "for purposes of this chapter [the Insurance Contributions Act]," I.R.C. § 3121(d), it demonstrates the problems of construing I.R.C. § 911 in tandem with 5 U.S.C. § 2105(c) when other statutory provisions also define "employee." Although the definition of "employee" in section 3121 applies only for the purpose of FICA, this purpose is at least as closely related to I.R.C. § 911 as is the purpose of 5 U.S.C. § 2105.

Appellants cite *Brummitt v. United States*, 329 F.2d 966, 967 (Ct.Cl.1964), and *Donaldson v. Commissioner*, 51 T.C. 830, 840 (1969), as tax cases standing for the proposition that NAFI personnel are other than employees of the United States or its agencies. In *Brummitt*, the stronger of these two cases for appellants, that proposition is offered in unsupported dicta. In *Donaldson*, the Tax Court at most assumed *arguendo* that the petitioning NAFI

employee was not a government employee. These cases offer no support to appellants.[4]

Looking at all of the authorities appellants cite, it is clear that none are *in pari materia* with the tax statute under consideration. It would be manifestly inappropriate to rely on statutes, regulations, and cases having limited purpose and applicability to interpret, in derogation of a plain meaning, another statute having an unrelated purpose. As the Supreme Court said in *United States v. Stewart*, 311 U.S. 60, 69, 61 S.Ct. 102, 108, 85 L.Ed. 40 (1940), "[n]o mere collation of other statutes can be decisive in determining what the instant statute means."

Appellants' argument that the treatment of NAFI personnel as United States employees in the contexts cited makes it likely that Congress intended to treat them as other than employees, essentially argues that with so many special provisions for the status of NAFI personnel, Congress presumably forgot that NAFI personnel are common law employees of the United States. We cannot make such a presumption.

### C. Tax Exemption Interpretation

█ All of appellants' arguments must be evaluated in light of the principle that a "claim for exemption must rest upon language in regard to which there can be no doubt as to its meaning, and that the exemption must be granted in terms too plain to be mistaken." *Bank of Commerce v. Tennessee*, 163 U.S. 416, 423, 16 S.Ct. 1113, 1116, 41 L.Ed. 211 (1896); *see also United States v. Wells Fargo Bank*, 485 U.S. 351, 354, 108 S.Ct. 1179, 1181, 99 L.Ed.2d 368 (1988) ("exemptions from taxation are not to be implied; they must be unambiguously proved"). In this light, appellants' arguments by implication and analogy are unpersuasive.

In *United States Trust Co. v. Helvering*, 307 U.S. 57, 59–60, 59 S.Ct. 692, 693, 83 L.Ed. 1104 (1939), the Court held that a provision of the World War Veterans' Act, Pub.L. No. 24–242, 43 Stat. 607, 613 (1924), and its amendments, exempting War Risk Insurance proceeds from "all taxation" did not prevent the imposition of estate taxes on the payment of such proceeds because estate tax is levied on the transfer and not on the proceeds themselves. The Court refused to reason by implication to find an exemption from estate taxes. *Id.*

*Helvering v. Northwest Steel Rolling Mills, Inc.*, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29 (1940), concerned a surtax on undistributed corporate profits. The statute creating the surtax contained an exemption from the surtax for corporations that would violate the terms of written contracts by distributing dividends. The Supreme Court refused to extend this exemption to a corporation that was prevented by state statute from making such distributions. The Court stated that "provisions granting special tax exemptions are to be strictly construed." *Id.* at 49, 61 S.Ct. at 111.

Here appellants have conceded that under the usual common law test for "employee" Matthews and Davis are employees of the United States or its agencies. Thus their claim is similar to those rejected in the Supreme Court cases cited above: they seek an implicit exemption from taxation in statutory language that read plainly does not exempt them.

Absent indications to the contrary, the courts have used the common law test for "employee" in tax cases. Where Congress has intended to use "employee" or "employment" differently, it has often gone to great lengths to explain the manner in which it wishes those terms defined. Indeed the provision upon which appellants most strongly rely, 5 U.S.C. § 2105(c), is but one of a series of definitions of "employee" for certain various purposes. For

---

4. Appellants also cite two Court of Claims cases, *Keetz v. United States*, 168 Ct.Cl. 205, 207 (1964), *Hopkins v. United States*, 206 Ct.Cl. 303, 513 F.2d 1360, 1362–63 (1975) *aff'd in part and vacated in part*, 427 U.S. 123, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976), and two Army Regulations, 230–2, § 1–1 (1978), and 215–3, § 1–1 (1986), all stating that NAFI personnel are other than federal employees. All of these references appear to derive from the treatment of NAFI personnel as other than employees of the United States for the civil service purposes of 5 U.S.C. § 2105(c).

example, 5 U.S.C. § 2105(b) deems employees of the United States Naval Academy laundry to be employees of the United States, but does not so deem employees of the Academy dairy. Section 2105(c) generally states that NAFI personnel are deemed not to be employees for the purposes listed, but itself contains numerous exceptions, suggesting that Congress initially understood NAFI personnel to be employees of the United States and then picked and chose the situations in which it wished NAFI personnel to be treated as other than government employees. *See also* I.R.C. § 3121(b) (defining "employment" for FICA purposes). Had Congress intended a departure from the traditional use of the common law test in section 911 it could just as easily have specified its intentions there.

Appellants can show nothing specific in the statute or its history to indicate that they were to benefit from the exclusion in section 911. They have picked from among the many statutory, regulatory, and case-law provisions defining "employee" a few that for nontax purposes define "employee of the United States" to exclude NAFI personnel and then argue that we should adopt such a definition for section 911 purposes. Obviously the rule requiring specific language to support an exemption from taxation prohibits us from adopting this interpretation.

III. CONCLUSION

Because appellants have failed to establish, in terms too plain to be mistaken, that Congress intended to grant an exclusion from taxation for NAFI personnel, the decision of the Tax Court is

*Affirmed.*