LUCIEN W. DUNN AND RUTH DUNN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dunn v. Commissioner
Docket No. 21858-92
United States Tax Court
T.C. Memo 1994-414; 1994 Tax Ct. Memo LEXIS 423; 68 T.C.M. (CCH) 503; August 22, 1994, Filed *423 Ruth Dunn, pro se. For respondent: Christian A. Speck and Neal O. Abreu. GOLDBERG
GOLDBERG
MEMORANDUM FINDINGS OF FACT AND OPINION GOLDBERG, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181 and 182. [1]
Respondent determined a deficiency in petitioners' 1989 Federal income tax in the amount of $ 2,362. The sole issue for decision is whether $ 18,143, which petitioners received in 1989 as "Extended Termination Payments" from the State Farm Insurance Companies, constitutes income subject to self-employment tax under section 1401(a). Before we decide this issue, we must first address respondent's Motion to Dismiss for Lack of Prosecution under Rule 123(b) as to petitioner Lucien W. Dunn. Between the time petitioners filed their petition and the time of trial, *424 Lucien Dunn's (petitioner) health deteriorated so that he could not conduct his legal affairs. Petitioner's wife, Ruth Dunn, obtained a durable power of attorney from petitioner which was duly witnessed and notarized. Petitioner Ruth Dunn relied on it to represent both petitioners in this matter. After reading the durable power of attorney, we find that it is sufficient to enable petitioner Ruth Dunn to represent petitioner before the Court in this matter. Therefore, respondent's motion to dismiss is denied. Now we turn to the underlying issue in this case. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. FINDINGS OF FACT Petitioners resided in Sacramento, California, on the date the petition was filed in this case. Petitioners timely filed their 1989 Federal income tax return on the cash basis of accounting. In 1943, petitioner became an exclusive agent of the State Farm Insurance Companies. He continued in that capacity until his retirement in 1978. Between 1943 to 1966, petitioner was considered an employee of the State Farm Insurance Companies. In 1966, the State Farm *425 Insurance Companies reclassified its insurance agents, including petitioner, as independent contractors. While petitioner was an agent of the State Farm Insurance Companies, he solicited applications for insurance from all the State Farm Insurance Companies listed below, collected payments, and assisted policyholders, among other duties. Petitioner's compensation for performance of these duties consisted of commissions for new and renewed policies. The State Farm Insurance Companies consisted of four subcompanies: State Farm Mutual Automobile Insurance Co., State Farm Life Insurance Co., State Farm Fire and Casualty Co., and State Farm General Insurance Co. Hereinafter, these companies will be collectively referred to as State Farm. Petitioner entered into a series of contracts with State Farm which set forth the terms of his agency relationship. The dispute in this case concerns the Extended Termination Payments that petitioner received pursuant to the State Farm Agent's Agreement, Form AA3, which he signed on March 1, 1977 (the Agreement). Under the Agreement, petitioner exercised his independent judgment as to time, place, and manner of soliciting insurance and servicing *426 policyholders. The agreement required petitioner to pay all expenses necessary to maintain an office, and pay the salaries of any people hired to run the office. When petitioner retired in 1978, he was 72 years old; he then turned over all of his insurance operations to another agent and engaged in no further activity in the insurance business. Pursuant to section III of the Agreement, petitioner's Agreement terminated upon his retirement and he became eligible for Termination Payments and Extended Termination Payments as provided for in sections IV and V of the Agreement, respectively. Section IV of the Agreement provides that Termination Payments will be paid for a period of 5 years to an agent whose agreement has been terminated, provided that the agent had 2 or more years of continuous service under either the Agreement or a prior agreement. This is so regardless of whether the agent dies, retires, or separates from service voluntarily or involuntarily. Termination Payments are payable to the agent or his legal representative according to a complex formula based upon a percentage of the income generated by policies developed by petitioner during his last year as an agent, *427 or the policies that remained in force during the first 12 months following the date of termination. In order to be eligible to receive Termination Payments, the agent must comply with section IV-B-1 and 2 which respectively require: (1) The agent to return any property owned by State Farm; and (2) the agent not solicit or sell competitive insurance to the State Farm policyholders. The Termination Payments have a bearing on this case but are not at issue. Section V of the Agreement provides for Extended Termination Payments to be made to former agents who have qualified for and previously received Termination Payments. Assuming the qualifications are met, these payments begin after the Termination Payments have been paid. The Extended Termination Payments begin on the last day of the 61st month after termination, and continue until the last day of the month in which the agent dies. Section V of the Agreement provides that Extended Termination Payments are made to agents who have met the qualifications for Termination Payments set forth in section IV-B-1 and 2 of the Agreement, and who: (1) Are age 65 or older; (2) had at least 20 years of service as a State Farm agent; and (3) *428 had 10 years of continuous service as a State Farm agent immediately prior to the date the Agreement was terminated. The Extended Termination Payments are divided among the various State Farm Companies except State Farm Life Insurance Company. Extended Termination Payments are based on the section IV Termination Payments of the Agreement. The monthly payments that comprise the Extended Termination Payments from State Farm Mutual Automobile Insurance Company are similar to those calculated in section IV, subparagraph A-1(a). In general, that section provides that the monthly payments are the lesser of: (1) A percentage of the agent's earnings in the 12 months prior to termination of the Agreement; or (2) a percentage of the policies which remain in force during the first 12 months following the date of termination. [2] The monthly payments that comprise the Extended Termination Payments from State Farm Fire and Casualty Company and State Farm General Insurance Company are amounts provided in subparagraph A-2 of section IV of the Agreement for "personal lines of insurance", and 50 percent of the amounts provided in subparagraph A-2 of section IV of the Agreement for "commercial lines *429 of insurance". In general, this section provides that monthly payments are the lesser of: (1) A percentage of the agent's earnings in the 12 months prior to termination of the Agreement; or (2) a percentage of the policies which remains in force during the first 12 months following the date of termination. This formula is similar to the formula used to calculate Termination Payments for State Farm Mutual Automobile Insurance. *430 In calculating the Termination Payments and Extended Termination Payments, any amounts earned from the State Farm Life Insurance Company are excluded. The Termination Payments and Extended Termination Payments were based on policies that required renewal each year. On April 25, 1978, petitioner elected to receive the Extended Termination Payments under a Joint and Last Survivor Option (Option). The Option allowed petitioner to designate a joint beneficiary, his spouse Ruth Dunn, so that the Extended Termination Payments would be paid to the survivor. This Option reduced the monthly payments under the Agreement, but allowed petitioner to provide income to his spouse for the remainder of her life, in the even the died before she did. In the year in question, petitioner received $ 18,142.00 [3] in Extended Termination Payments as follows: Extended Termination Payments
State Farm Fire and Casualty Co.
$  4,130.00
State Farm Mutual Automobile Co.
$ 13,755.00
State Farm General Insurance Co.
$    257.00
TOTAL
$ 18,142.00
Petitioners reported these payments as income on their Federal income tax return, but did not pay self-employment tax on them. *431 ULTIMATE FINDINGS OF FACT Petitioner was self-employed at the time of his retirement. The extended termination payments received by petitioner in 1989 represent deferred compensation from his self-employment. OPINION Respondent determined that petitioner's Extended Termination Payments constituted income from self-employment within the meaning of section 1401 and were consequently subject to self-employment tax. Petitioner makes three alternative arguments: (1) That petitioner was not self-employed but rather an employee of State Farm, and is therefore not subject to self-employment tax on the Extended Termination Payments; (2) that for 8 years of the 20-year qualification period, petitioner was an employee of State Farm, and therefore the Extended Termination Payments were not entirely earned while he was self-employed; and (3) that the Extended Termination Payments were payments for goodwill developed by petitioner and was a valuable asset. We discuss each of these alternative arguments separately. The determination of respondent, as contained in her notice of deficiency, is presumed to be correct, and petitioners bear the burden of proving that respondent erred in her determination. *432 Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Classification as Independent Contractor or Employee
No single factor determines whether a worker is a common-law employee, but the employer's right to control the manner and means of performing the work is a crucial consideration. Matthews v. Commissioner, 92 T.C. 351, 361 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990). In the instant case, at the time of his retirement, petitioner was regarded by State Farm as an independent contractor. Petitioner had wide discretion in carrying on the business of selling insurance, and provided the means to carry on the business of selling insurance. He paid for office space, supplies, and employees to assist him in running the office. Accordingly, after weighing all of the relevant factors, we conclude that petitioner was an independent contractor and not an employee for State Farm when he retired. See also Simpson v. Commissioner, 64 T.C. 974, 987 (1975). Effect of Years as an Employee on Extended Termination Payments
On brief, petitioner argues *433 that since he was an independent contractor for only the last 12 years of his work as an agent for State Farm, the instant case is distinguishable from Milligan v. Commissioner, T.C. Memo. 1992-655 and Erickson v. Commissioner, T.C. Memo. 1992-585, affd. without opinion 1 F.3d 1231 (1st Cir. 1993), upon which respondent relies. Petitioner argues that in order to qualify for the Extended Termination Payments, he had to work 20 years as an agent for State Farm, and that for the first 8 years of the 20-year qualification period, petitioner was an employee. Therefore, petitioner argues, the Extended Termination Payments are substantially different than the Termination Payments that were the subject of the Milligan v. Commissioner, supra, case, and cannot be characterized as income derived while he was an independent contractor. We are not persuaded by this argument. Although it is true that petitioner was classified by State Farm as an employee for 8 years of the 20 years required to qualify for the Extended Termination Payments, petitioner offered no evidence *434 that such payments were contingent on amounts earned while he was considered an employee. In fact, the Extended Termination Payments were calculated as a percentage of either petitioner's last year of service as an agent, or the first year after his service as an agent. It is clear that during this last year petitioner was an independent contractor and that he had been an independent contractor for at least the previous 12 years. Furthermore, the Extended Termination Payments were based primarily on new contracts and contracts that required renewal each year. Since these contracts were short term, petitioner's efforts, 12 years prior, have little bearing on the contracts entered into or renewed near petitioner's retirement. Petitioner did not and could not offer any proof as to what percentage of the Extended Termination Payments was attributable to the years during which he was classified as an employee. The 20-year qualification requirement is purely a contractual device used to qualify petitioner to receive Extended Termination Payments based on his service, in whatever capacity, to State Farm. The Extended Termination Payments were based entirely on the last year of petitioner's *435 service to State Farm and were not dependent on petitioner's performance of service while classified as an employee. Sale of Goodwill
In Erickson v. Commissioner, supra, in holding that amounts received by the taxpayer after termination of his General Agent's Contract with three life insurance companies were not proceeds of the sale of goodwill, we relied upon the facts that the record contained no evidence of vendible assets. The same circumstances recur in this case and persuade us that no sale of goodwill has taken place. This case is similar to the case of Milligan v. Commissioner, supra, where the taxpayer was an insurance agent for State Farm and had retired from selling insurance. The taxpayer contracted to receive Termination Payments and Extended Termination Payments pursuant to an agreement similar to the agreement in the instant case. In that case we were asked to decide whether the Termination payments were subject to self-employment tax under section 1401. We stated that section 1401(a) imposes a tax upon an individual's "self-employment income". Generally, section 1402(b) defines self-employment *436 income as the "net earnings from self-employment", with certain exceptions not relevant to this case. "Net earnings from self-employment" is defined in section 1402(a) as "gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business". It is well established that the earnings of an insurance agent who is an independent contractor are "self-employment income" subject to self-employment tax. Simpson v. Commissioner, 64 T.C. 974 (1975); Erickson v. Commissioner, T.C. Memo. 1992-585 (holding that payments to former insurance agent of previously earned commissions are subject to self-employment tax). The regulations provide that the income which is subject to the tax may be derived from self-employment activity which occurred in a prior year. Gross income derived by an individual from a trade or business includes gross income received * * * or accrued * * * in the taxable year from a trade or business even though such income may be attributable in whole or in part to services rendered or other *437 acts performed in a prior taxable year as to which the individual was not subject to the tax on self-employment income. [Sec. 1.1402(a)-1(c), Income Tax Regs.]
The definition of self-employment income requires a three prong analysis. The income must be (1) derived, (2) from a trade or business, (3) carried on by such individual. Sec. 1402(a). The word "derived", for these purposes, means to take or receive from a specified source. Milligan v. Commissioner, supra.Petitioner's Extended Termination Payments were derived exclusively from his last year's sales performance or from the renewal rate in the first year after his retirement. Furthermore, we have already decided that petitioner was engaged in a trade or business while he was an agent for State Farm. To be considered a trade or business "carried on" by a taxpayer, the income must arise from some actual (whether present, past, or future) income-producing activity of the taxpayer before such income becomes subject to self-employment tax liability. Newberry v. Commissioner, 76 T.C. 441, 446 (1981). However, the Newberry case is not directly on point. *438 In that case, the taxpayers' grocery business was destroyed by fire, and the taxpayers received insurance proceeds intended to compensate them for lost income. These "business interruption proceeds" did not constitute self-employment income because inability to conduct business was a necessary precondition of their receipt. We held that for income to be subject to self-employment tax, there must be "a nexus between the income received and a trade or business that is, or was, actually carried on." Id. at 444. Our holding in Newberry v. Commissioner, supra, while consistent with the proposition that previously conducted trade or business provides a sufficient nexus to self-employment tax, does not resolve the issue of its applicability to the Extended Termination Payments. The phrase "trade or business carried on" occurs a number of times in the Code and legislative history in the context of self-employment tax. "Net earnings from self-employment", as defined in the first sentence of section 1402(a), includes "gross income derived by an individual from any trade or business carried on by such individual". The significance *439 of the "carried on" requirement is not that the taxpayer must be currently working, but rather, as we said in Newberry v. Commissioner, supra at 446, produced income at some point in the past. The self-employment tax was enacted by the Social Security Act Amendments of 1950, ch. 809, 64 Stat. 477, in order to extend the benefits of Social Security to self-employed individuals. The legislative history of this provision supports the conclusion that the tax burden is intended to be upon the taxpayer who carried on the trade or business: The trade or business must be "carried on" by the individual, either personally or through agents or employees, in order for the income to be included in his "net earnings from self-employment." Accordingly, gross income derived by an individual from a trade or business carried on by him does not include income derived by a beneficiary from an estate or trust even though such income is derived from a trade or business carried on by the estate or trust. [S. Rept. 1669, 81st Cong., 2d Sess. (1950), 1950-2 C.B. 302, 354.]
See section 1.1402(a)-2(b), Income Tax Regs., which incorporates *440 this language. If the individual receives income from a business which he has not "carried on", the tax does not apply to that income. The individual's activity in carrying on the trade or business is the nexus which determines the incidence of the tax. We hold that Extended Termination Payments made by State Farm to petitioner constitute self-employment income and are subject to self-employment tax. An appropriate order and decision will be entered. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section IV subparagraph A-1 (a) provides: 1. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY will pay: (a) For the first twelve (12) months following the date of termination the lesser of the amounts computed in (1) and (2): (1) twenty percent (20%) of the service compensation on "personally produced" policies, you earned under the Schedule of Payments for the Other than Health Insurance Policies in the twelve (12) preceding months, or twenty percent (20%) of the service compensation on "personally produced" policies credited to your account, as of the date of termination, which remain in force in the same state, during the first twelve (12) months following the date of termination, whichever is greater, or
(2) thirty percent (30%) of the service compensation on "personally produced" policies credited to your account as of the date of termination, which remain in force in the same state during the first twelve (12) months following the date of termination.
In the event thirty percent (30%) of the service compensation as specified in (2) is less that the greater amount of the service compensation as computed in (1) and if the number of "personally produced" policies in force at the end of the first twelve (12) months following the date of termination is equal to or greater than seventy-five percent (75%) of the number of the "personally produced" policies in force at date of termination, you will be paid the amount provided for in (1).↩
3. There is a $ 1 difference between petitioner's 1989 Federal income tax return and respondent's notice of deficiency.↩