T.C. Memo. 1999-140


UNITED STATES TAX COURT


PAULA M. KELLY, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8983-97.                    Filed April 29, 1999.


Raymond B. Oothout, for petitioner.

Louise R. Forbes, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GOLDBERG, Special Trial Judge:  This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182.  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax in the amount of $2,256 for the 1994 tax year.

After a concession,[1] the remaining issues for decision are: (1) Whether petitioner is entitled to claim Schedule C expenses for the 1994 tax year, and (2) whether petitioner is entitled to an earned income credit for 1994.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, petitioner resided in Milton, Massachusetts.

                              FINDINGS OF FACT

In 1994, petitioner worked in the entertainment media providing freelance makeup services for actors and models working in film, television, theater, and still photography. During this time petitioner was also a member of the Makeup and Hair Stylists Local Union 798 I.T.S.E. of New York, New York.

Petitioner obtained work in the industry by reading various trade publications and by contacting production companies bringing theatrical productions to the Boston area. Petitioner also apparently obtained some work by referral. Once petitioner knew there would be work available on a certain date, petitioner sent her resume to companies that might hire her. Parties

---

[1] Respondent concedes that petitioner reported rental income in the amount of $675 on Schedule C of petitioner's 1994 return.

interested in petitioner's services negotiated a "deal memo" with petitioner which included the daily rate for her first 8 hours of work, overtime pay, break time, and whether a "kit"[2] would be provided by the company where she was working. After being hired and in order to receive remuneration, petitioner recorded her time on a timesheet which she turned in to members of the production staff. Petitioner was usually paid on a weekly basis.

Petitioner reported Schedule C income in the amount of $23,519 on her 1994 income tax return. Of this amount, petitioner reported Form W-2 income in the amount of $20,218, Form 1099 income in the amount of $2,626, and income from kit rentals in the amount of $675. Petitioner claimed 1994 Schedule C deductions in the amount of $22,249.

Petitioner was required to move suddenly in January of 1997, during a time at which petitioner was also suffering from depression. As a result of both the unforeseen move and her medical condition, petitioner's 1994 receipts for paid expenses, among other items, were lost.

In a notice of deficiency dated February 5, 1997, respondent determined that petitioner's Form W-2 income did not qualify as Schedule C statutory employee income and respondent, therefore, disallowed all of petitioner's offsetting Schedule C deductions.

---

[2] Though it is unclear from the record, a "kit" apparently refers to a makeup kit stocked with cosmetic supplies.

OPINION

1. <u>Schedule C Expenses</u>

At trial, petitioner argued that she earned her 1994 income in her capacity as an independent contractor, or, in the alternative, as a statutory employee, even though most of her 1994 income was reported as employee wages on Forms W-2. Therefore, as an independent contractor or as a statutory employee, she properly reported her income and deducted her business expenses on Schedule C.

Deductions are a matter of legislative grace. See <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934). A taxpayer bears the burden of proving that she is entitled to her claimed deductions. See <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Section 162(a) allows a taxpayer to deduct all ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business. No deduction is allowed for personal, living, or family expenses. See sec. 262.

Taxpayers are required to maintain adequate records sufficient to enable the Commissioner to determine the taxpayer's correct tax liability. See sec. 6001; see also <u>Meneguzzo v. Commissioner</u>, 43 T.C. 824, 831-832 (1965); sec. 1.6001-1(a), Income Tax Regs.

Generally, if a claimed business expense is deductible, but the taxpayer is unable to substantiate it, the Court is permitted to make as close an approximation as it can. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). The estimate must have a reasonable evidentiary basis. See Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Section 274(d), however, requires strict substantiation of certain expenses, including those incurred with respect to any listed property as defined in section 280F(d)(4). Listed property includes any passenger automobile. See sec. 280F(d)(4)(A)(i). Section 274 supersedes the doctrine in Cohan v. Commissioner, supra. See sec. 1.274-5T(a)(4), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

A taxpayer is required to substantiate expenses for listed property by establishing the amount, time, place, and business purpose of the expense. See sec. 274(d). Even if such an expense would otherwise be deductible, the deduction may still be denied if there is insufficient substantiation to support it. See sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985).

A taxpayer must maintain adequate records with respect to listed property. See sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). But where the taxpayer establishes that the failure to produce adequate records

is due to the loss of such records through circumstances beyond the taxpayer's control, such as destruction by fire, flood, earthquake, or other casualty, the taxpayer shall have a right to substantiate such a deduction by reasonable reconstruction of her expenditures or use. See sec. 1.274-5T(c)(5), Temporary Income Tax Regs., 50 Fed. Reg. 46022 (Nov. 6, 1985).

Petitioner was unable to remember many details regarding her claimed deductions. Although both petitioner and her witnesses testified that petitioner had once possessed receipts substantiating her 1994 Schedule C deductions, neither petitioner, her accountant, nor her attorney attempted to reconstruct petitioner's claimed expenditures by contacting businesses or financial institutions with which petitioner conducted business in 1994.

On the basis of the record, we find that petitioner did not substantiate her claimed Schedule C expenses. Therefore, we hold that petitioner is not entitled to claim Schedule C deductions for the 1994 tax year. Respondent is sustained on this issue.

In any event, the expenses incurred would not be allowable on Schedule C because petitioner was not in business for herself, as explained hereafter.

In considering whether petitioner was an independent contractor or an employee, we apply common-law rules. Courts consider various factors to determine whether an employment

relationship exists between the parties, including:  (1) The degree of control exercised by the principal; (2) which party invests in work facilities used by the individual; (3) the opportunity of the individual for profit or loss; (4) whether the principal can discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believed they were creating.  See Weber v. Commissioner, 103 T.C. 378, 387 (1994), affd. per curiam 60 F.3d 1104 (4th Cir. 1995).  No single factor dictates the outcome.  All the facts and circumstances should be considered.  Id.

The right of control is ordinarily the crucial factor in determining whether an employer-employee relationship exists. See Matthews v. Commissioner, 92 T.C. 351, 361 (1989), affd. 907 F.2d 1173 (D.C. Cir. 1990).  To retain the requisite control over the details of an individual's work, the principal need not stand over the individual and direct every move made by the individual. See Weber v. Commissioner, supra at 388.

In this case, petitioner's services were fixed by a deal memo which petitioner signed with each production company which hired her.  The deal memo also fixed petitioner's compensation. Depending on the circumstances, petitioner was variously paid an hourly rate which may or may not have included overtime, a flat rate, or a rate based on union guidelines.  The deal memo also

covered the timing and length of allowable break time. Additionally, petitioner was required to submit timesheets in order to be paid. The deal memo controlled where and when petitioner reported for work and whether her principal would, or would not, furnish petitioner's makeup kit.

With regard to the control exerted by the principal, petitioner was required to remain on the set for as long as her services were needed. Additionally, the company which hired petitioner could require her to change an actor's makeup according to the company's specifications.

Petitioner also was aware that the production companies she worked for would report her compensation as wage income on a Form W-2. At trial, petitioner submitted a document from FPS Services, Inc., entitled: Crossroads Films - Crew Payroll - Information & Instructions. The document contained the following language:

> Independent Contractors/Corporations  We do not pay Independent Contractors unless they are Incorporated. In order to be paid as a corporation, copies of your Articles of Incorporation or your Corporate Seal must be submitted.  Once on file, they do not need to be resubmitted.  Corporations can be paid on a timecard or their own invoice.  <u>IMPORTANT</u>:  The name of the Corporation, the Federal ID# AND the Name and Social Security # of the employee must be indicated.  As a corporation you should have your own Worker's Compensation Insurance.  If you do, please provide proof of it to FPS.  If you don't FPS will provide it, charging Crossroads Films.  Crossroads Films may ask that you reimburse them for this expense.

Petitioner was aware that she could have been treated as an independent contractor if she had incorporated and that the practice of requiring independent contractors to be incorporated was common in the industry. Of course, if petitioner had incorporated and been treated as an independent contractor, petitioner would then have been required to pay for her own worker's compensation insurance. Petitioner's testimony, combined with the above document, clearly outlines the nature of the relationship petitioner and her principal thought they had created, that of employer/employee.

Petitioner contends, in the alternative, that she was a "statutory employee" pursuant to section 3121(d)(3), and, thus, that she is still entitled to deduct her expenses on Schedule C. We disagree. Petitioner clearly does not meet the requirements of section 3121(d)(3) as she was not engaged in work as an agent driver, commission driver, insurance salesman, home worker, or traveling salesman. Furthermore, none of the Forms W-2 indicated that petitioner was a "statutory employee".

On the basis of the record, we find that petitioner was hired as an employee in her profession as a makeup artist during the 1994 tax year.

## 2. Earned Income Credit

An eligible individual is allowed an earned income credit for the taxable year in an amount equal to the credit percentage

of so much of the taxpayer's earned income as does not exceed the earned income amount.  See sec. 32(a).  Earned income includes wages, salaries, tips, and other employee compensation plus net earnings from self-employment.  The amount of earned income credit to which petitioner is entitled is a computational matter.

On the basis of the record, we find that petitioner earned gross income in the amount of $23,519 for the 1994 tax year and that petitioner had one qualifying child in 1994.  Therefore, based on statutory guidelines for the 1994 tax year, we find that the earned income credit allowed would be $37.  Respondent is sustained on this issue.

To reflect the foregoing,

Decision will be entered

under Rule 155.