T.C. Summary Opinion 2002-47

UNITED STATES TAX COURT

GEORGE A. AND HILDA QUINTERO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 8364-00S.                    Filed May 6, 2002.

<u>Larry Fedro</u>, for petitioners.

<u>John T. Lortie</u>, for respondent.

CARLUZZO, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for 1997.  Rule references are to the Tax Court Rules of Practice and Procedure.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined an $8,780 deficiency in, and a $1,756 penalty under section 6662(a) with respect to petitioners' 1997 Federal income tax. The Court must decide: (1) The amount of compensation George A. Quintero earned and received from AAA Transmissions Service Center of North Miami, Florida (AAA), during 1997; (2) whether such compensation constitutes self-employment income subject to the tax imposed by section 1401; and (3) whether the underpayment of tax required to be shown on petitioners' 1997 Federal income tax return is a substantial understatement of income tax.

Background

Some of the facts have been stipulated and are so found. Petitioners are husband and wife. They filed a timely joint 1997 Federal income tax return. At the time the amended petition was filed, petitioners resided in Pompano Beach, Florida. References to petitioner are to George A. Quintero.

During 1997, petitioner was a student at the Ft. Lauderdale campus of Keiser College. From the beginning of the year until sometime in December, he was also employed as a "trainee-helper" by AAA, an automobile transmission repair shop.

Petitioner was not a certified mechanic during 1997. His duties at AAA included the removal and replacement of automobile transmissions, but he did not repair or rebuild transmissions. When at work he wore a uniform provided by AAA, he used tools

borrowed from coworkers, and he was supervised by Stuart Smith, AAA's general manager. As general manager, Mr. Smith performed the majority of AAA's bookkeeping functions, including the preparation of monthly payroll sheets.

Mr. Smith, on behalf of AAA, and petitioner signed an "Independent Contractor Agreement", dated December 15, 1996 (the agreement). According to the agreement, petitioner agreed to perform services for AAA as an independent contractor and not as an employee.

Petitioner's work schedule at AAA varied during 1997. At the direction of AAA, generally he worked 5 days a week, Monday through Friday, during business hours. Some weeks, he worked "full-time" (40 or more hours), but often he worked fewer hours because there was no work for him to do or so that he could attend classes. Petitioner's work hours on any given day were set by AAA and noted on a calendar maintained by a shop supervisor. Mr. Smith used the calendar to prepare monthly payroll sheets that list the days and hours that petitioner worked during 1997 and the amount of compensation he received. AAA compensated petitioner at the rate of $13.63 per hour. He was paid in cash, usually once a week on Friday. The monthly payroll sheet indicates that petitioner was paid a total of $23,552 according to the schedule included at appendix I.

During 1997, petitioner maintained a checking account at NationsBank (the checking account). The checking account was not a joint account. He deposited some of his earnings from AAA into the checking account. During 1997, total deposits of $18,087 were made to the checking account as set forth in Appendix II.

During 1997, Mrs. Quintero was employed part-time as a housekeeper. She earned wages of $10,237 from this position, as reflected on a Form W-2 issued to her by her employer.

AAA issued a Form 1099-MISC, Miscellaneous Income, reporting nonemployee compensation earned by petitioner during 1997 in the amount of $23,552. AAA's accountant prepared the Form 1099-MISC based on information contained on AAA's monthly payroll sheets.

Petitioners' 1997 return was prepared by H&R Block Eastern Tax Service Inc. The return lists Mrs. Quintero's occupation as "housekeeping" and petitioner's as "unemployed". The only income reported on petitioners' 1997 return is the income earned by Mrs. Quintero. There is no income tax liability (either under section 1 or section 1401) reported on the return. A refund of $3,656 attributable entirely to a section 32 earned income credit is claimed on the return.

In the notice of deficiency, respondent, relying upon the Form 1099-MISC issued to petitioner by AAA, increased petitioners' income by $23,552. Respondent further determined that the compensation that petitioner received from AAA

constitutes self-employment income subject to tax under section 1401. Respondent also determined that the underpayment of tax required to be shown on petitioners' 1997 is a substantial understatement of income tax and imposed a penalty under section 6662(a). Other adjustments made in the notice of deficiency are not in dispute.

Discussion

1. Unreported Income

Petitioners acknowledge that petitioner received compensation from AAA during 1997 that was not reported on their 1997 return but claim that petitioner received less than the amount reported on the Form 1099-MISC issued by AAA. According to petitioners, AAA's monthly payroll sheets, which were used to prepare the Form 1099-MISC issued to petitioner, overstate the number of hours petitioner worked during 1997 and, therefore, overstate the compensation he was paid.

On their 1997 return, petitioners expressly represented that petitioner was unemployed during 1997 and implicitly represented that he earned no income during that year. Neither representation is true. In the petition filed in this case, petitioners represent that their "records" indicate that petitioner's "gross" earnings from AAA during 1997 amounted to less than $5,000. If maintained, no such "records" were presented at trial. At trial, petitioners estimated that

petitioner's earnings from AAA amounted to $6,350 (computed by
subtracting gifts from family members plus the income earned by
Mrs. Quintero reported on their 1997 return from the total
deposits made to the checking account).

We consider petitioners' various claims as to the amount of
income petitioner earned during 1997 against the amount reflected
on AAA's records.[1]  The accuracy of AAA's monthly payroll
records, although not beyond question, is supported by the
pattern of deposits into petitioner's checking account.  All
things considered, we find AAA's records more reliable than
petitioners' various and inconsistent claims as to the amount of
compensation that petitioner received from AAA during 1997.
Accordingly, respondent's determination that petitioner earned
and received compensation totaling $23,552 from AAA during 1997
is sustained.

2.  <u>Self-employment tax</u>

In addition to the income tax imposed by section 1, section
1401(a) imposes a tax upon a taxpayer's self-employment income.
Disregarding irrelevant exceptions, "self-employment income" is
defined as "net earnings from self-employment", which, in turn,
is defined as "the gross income derived by an individual from any

---

[1] We note that at trial respondent did not exclusively rely
upon the Form 1099.  AAA's payroll records as well as the
testimony of the person responsible for maintaining those records
were also admitted into evidence.  See sec. 6201(d).

trade or business carried on by such individual, less the deductions allowed * * * which are attributable to such trade or business".  Sec. 1402(a) and (b).  Other than under circumstances not present in this case, services performed by an individual as an employee do not constitute a trade or business for self-employment tax purposes.  Sec. 1402(c)(2).

According to respondent, the compensation that petitioner received from AAA during 1997 constitutes self-employment income subject to tax under section 1401.  Petitioners, having failed to report any such income on their 1997 return, did not report any section 1401 tax on that return.  They now claim that petitioner performed services for AAA during 1997 as an employee rather than an independent contractor.

The question of whether an individual performs services for another as an employee or independent contractor is generally considered a question of fact.  Packard v. Commissioner, 63 T.C. 621, 629 (1975).  In resolving such questions, this and other Federal courts apply what is commonly referred to as the common law test embodied in sections 31.3121(d)-1(c)(2) and 31.3401(c)-1(b), Employment Tax Regs.  Matthews v. Commissioner, 907 F.2d 1173, 1178 (D.C. Cir. 1990), affg. 92 T.C. 351 (1989); Packard v. Commissioner, supra.  An employee is defined as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an

employee". Sec. 3121(d)(2). The relevant factors taken into account to determine the status of an individual as an employee or independent contractor include: (1) The degree of control exercised by the principal over the details of the work; (2) which party invests in the facilities used in the work; (3) the opportunity of the hired party for profit or loss; (4) whether the type of work is part of the principal's regular business; (5) the permanency of the relationship between the parties to the relationship; (6) whether the principal has the right to discharge the individual; (7) whether the principal provides benefits to the hired party typical of those provided to employees; and (8) the relationship the parties believe they are creating. Profl. & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988); see also United States v. Silk, 331 U.S. 704, 716 (1947). Although no single factor is determinative, "employer control over the manner in which the work is performed * * * is the basic test." Gen. Inv. Corp. v. United States, 823 F.2d 337, 341 (9th Cir. 1987).

Respondent's position that petitioner was not an employee of AAA during 1997 seems to be entirely based upon the agreement, which, in fact, does undermine petitioners' position to the contrary. Nevertheless, the application of the other relevant factors leads to the conclusion that AAA possessed and exercised sufficient control over the services performed by petitioner so

as to consider him an employee.  It follows that the compensation
that petitioner received from AAA during 1997 does not constitute
self-employment income within the meaning of section 1401.

3.    Substantial Understatement of Income Tax

Section 6662(a) imposes an accuracy-related penalty of 20
percent of any portion of an underpayment of tax that is
attributable to a substantial understatement of income tax.
Sec. 6662(b)(2), (d).  An understatement of income tax is a
substantial understatement of income tax if it exceeds the
greater of $5,000 or 10 percent of the tax required to be shown
on the taxpayer's return.  Sec. 6662(d)(1).

Ignoring conditions not relevant here, for purposes of
section 6662, an understatement is defined as the excess of the
amount of the tax required to shown on the taxpayer's return over
the amount of the tax which is shown on the return.  Sec.
6662(d)(2)(A).  In this case, for purpose of section 6662, the
amount of tax required to be shown on petitioners' 1997 return is
$1,796.[2]  The amount of tax shown on the return is zero.[3]
Because the difference between these two amounts is less than

---

[2] This is the sec. 1 income tax that results from including
in petitioners' 1997 income the compensation that petitioner
received from AAA during that year.

[3] Unlike the computation of a deficiency under sec. 6211 or
the computation of an understatement for purposes of sec. 6694,
the earned income credit claimed on petitioners' 1997 return (and
disallowed in the notice of deficiency) is not taken into account
in the computation of the understatement of income tax for
purposes of sec. 6662.

$5,000, the underpayment of tax required to be shown on their 1997 return is not a substantial understatement of income tax. Consequently, they are not liable for the accuracy-related penalty imposed by section 6662(a).

Reviewed and adopted as the report of the Small Tax Case Division.

Based on the foregoing,

Decision will be entered under Rule 155.

Appendix I

Summary of AAA's Monthly Payroll Records for Petitioner

| Week of: | Daily Hours Worked | | | | | Total Hours | Wages[1] |
|---|---|---|---|---|---|---|---|
| | Mon | Tues | Wed | Thurs | Fri | | |
| 1/3/97 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 47.5 | $647.43 |
| 1/10/97 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 47.5 | 647.43 |
| 1/17/97 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 47.5 | 647.43 |
| 1/24/97 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 47.5 | 647.43 |
| 1/31/97 | 6 | 9 | 9 | 5 | 5 | 34 | 463.42 |
| | | | | | | | $3,053.14 |
| 2/7/97 | 5 | 0 | 0 | 9 | 9.5 | 23.5 | $320.31 |
| 2/14/97 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 47.5 | 647.43 |
| 2/21/97 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 47.5 | 647.43 |
| 2/28/97 | 0 | 0 | 9.5 | 9.5 | 9.5 | 28.5 | 388.46 |
| | | | | | | | $2,003.63 |
| 3/14/97 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 47.5 | $647.43 |
| 3/21/97 | 0 | 0 | 9.5 | 9.5 | 9.5 | 28.5 | 388.46 |
| 3/28/97 | 0 | 5 | 9.5 | 9.5 | 9.5 | 33.5 | 456.61 |
| | | | | | | | $1,492.50 |
| 4/4/97 | 5 | 8 | 9.5 | 9.5 | 9.5 | 41.5 | $565.65 |
| 4/11/97 | 9.5 | 9.5 | 9.5 | 8 | 0 | 36.5 | 497.50 |
| 4/18/97 | 9.5 | 0 | 0 | 0 | 0 | 9.5 | 129.49 |
| 4/25/97 | 0 | 0 | 0 | 0 | 9.5 | 9.5 | 129.49 |
| | | | | | | | $1,322.13 |
| 5/2/97 | 0 | 9.5 | 9.5 | 9.5 | 9.5 | 38 | $517.94 |
| 5/9/97 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 47.5 | 647.43 |
| 5/16/97 | 9.5 | 6 | 0 | 8 | 0 | 23.5 | 320.31 |
| 5/23/97 | 0 | 9.5 | 9.5 | 9.5 | 9.5 | 38 | 517.94 |
| 5/30/97 | 0 | 9.5 | 9 | 9 | 9.5 | 37 | 504.31 |
| | | | | | | | $2,507.93 |
| 6/6/97 | 0 | 9.5 | 9.5 | 9.5 | 9.5 | 38 | $517.94 |
| 6/13/97 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 47.5 | 647.43 |
| 6/20/97 | 9.5 | 9.5 | 9 | 9 | 9.5 | 46.5 | 633.80 |
| 6/27/97 | 9.5 | 9.5 | 9.5 | 9.5 | 9.5 | 47.5 | 647.43 |
| | | | | | | | $2,446.60 |

| Week of: | Daily Hours Worked | | | | | Total Hours | Wages |
|---|---|---|---|---|---|---|---|

--------

[1] Total hours multiplied by petitioner's hourly rate of $13.63.

|          | Mon | Tues | Wed | Thurs | Fri |      |           |
|----------|-----|------|-----|-------|-----|------|-----------|
| 7/4/97   | 0   | 9.5  | 9.5 | 9.5   | 9.5 | 38   | $517.94   |
| 7/11/97  | 0   | 0    | 9.5 | 9.5   | 9.5 | 28.5 | 388.46    |
| 7/18/97  | 9.5 | 0    | 9   | 9     | 9   | 36.5 | 497.50    |
| 7/25/97  | 9.5 | 9.5  | 0   | 9.5   | 9.5 | 38   | 517.94    |
|          |     |      |     |       |     |      | $1,921.84 |
|          |     |      |     |       |     |      |           |
| 8/1/97   | 9.5 | 0    | 9.5 | 9.5   | 9.5 | 38   | $517.94   |
| 8/8/97   | 0   | 0    | 5.5 | 9.5   | 9.5 | 24.5 | 333.94    |
| 8/15/97  | 9.5 | 9    | 9   | 9     | 0   | 36.5 | 497.50    |
| 8/22/97  | 0   | 9.5  | 0   | 9.5   | 9.5 | 28.5 | 388.46    |
| 8/29/97  | 9   | 0    | 0   | 9.5   | 9.5 | 28   | 381.64    |
|          |     |      |     |       |     |      | $2,119.48 |
|          |     |      |     |       |     |      |           |
| 9/5/97   | 9.5 | 0    | 9.5 | 0     | 9.5 | 28.5 | $388.46   |
| 9/12/97  | 9   | 0    | 0   | 9.5   | 9.5 | 28   | 381.64    |
| 9/19/97  | 9.5 | 9.5  | 9.5 | 9.5   | 9.5 | 47.5 | 647.43    |
| 9/26/97  | 0   | 0    | 0   | 9.5   | 9.5 | 19   | 258.97    |
|          |     |      |     |       |     |      | $1,676.50 |
|          |     |      |     |       |     |      |           |
| 10/3/97  | 9.5 | 9.5  | 9.5 | 9.5   | 9.5 | 47.5 | $647.43   |
| 10/10/97 | 9   | 9    | 0   | 0     | 9.5 | 27.5 | 374.83    |
| 10/17/97 | 9.5 | 0    | 9.5 | 9.5   | 9.5 | 38   | 517.94    |
| 10/24/97 | 0   | 7    | 5.5 | 9     | 9.5 | 31   | 422.53    |
| 10/31/97 | 9.5 | 9.5  | 9.5 | 9.5   | 9.5 | 47.5 | 647.43    |
|          |     |      |     |       |     |      | $2,610.16 |
|          |     |      |     |       |     |      |           |
| 11/7/97  | 9.5 | 9.5  | 9.5 | 9.5   | 9.5 | 47.5 | $647.43   |
| 11/14/97 | 0   | 0    | 0   | 8     | 9.5 | 17.5 | 238.53    |
| 11/21/97 | 9.5 | 0    | 0   | 0     | 9.5 | 19   | 258.97    |
| 11/28/97 | 0   | 0    | 0   | 9.5   | 9.5 | 19   | 258.97    |
|          |     |      |     |       |     |      | $1,403.90 |
|          |     |      |     |       |     |      |           |
| 12/5/97  | 9.5 | 9.5  | 9.5 | 0     | 9.5 | 38   | $517.94   |
| 12/12/97 | 3   | 0    | 6   | 7     | 9.5 | 25.5 | 347.02    |
| 12/19/97 | 9.5 | 0    | 0   | 0     | 0   | 9.5  | 129.49    |
|          |     |      |     |       |     |      | $994.45   |

Total earnings for 1997 (rounded
to nearest dollar)               $23,552

Appendix II

Schedule of Deposits into Petitioner's Checking Account

| Date of Deposit | Amount |
| --- | --- |
| Jan. 21 | $400 |
| Feb. 4 | 350 |
| Feb. 12 | 250 |
| Feb. 18 | 525 |
| Feb. 26 | 550 |
| March 6 | 360 |
| March 19 | 520 |
| April 1 | 550 |
| April 8 | 500 |
| April 16 | 400 |
| April 21 | 100 |
| May 7 | 350 |
| May 13 | 600 |
| May 29 | 550 |
| June 5 | 650 |
| June 12 | 450 |
| June 18 | 500 |
| June 24 | 550 |
| July 14 | 400 |
| July 18 | 495 |
| July 23 | 400 |
| July 31 | 400 |
| Aug. 8 | 400 |
| Aug. 14 | 400 |
| Aug. 28 | 440 |
| Sept. 5 | 380 |
| Sept. 10 | 480 |
| Sept. 25 | 817 |
| Oct. 9 | 600 |
| Oct. 16 | 530 |
| Oct. 22 | 460 |
| Oct. 30 | 500 |

| Date of Deposit | Amount |
| --- | --- |
| Nov. 5 | 560 |

Nov. 25                          800

Dec. 4                           390
Dec. 8                         1,000
Dec. 10                          480