T.C. Memo. 2003-10

UNITED STATES TAX COURT

DENNIS J. AND CAROL R. KRAUS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2009-01.                    Filed January 9, 2003.

Dennis J. and Carol R. Kraus, pro sese.

<u>Michael W. Berwind</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' 1997 and 1998 income tax of $10,069 and $10,337,
respectively.  Respondent also determined penalties under section
6662(a)[1] for 1997 and 1998 of $4,027.60 and $4,134.80,

_____

[1] All section references are to the Internal Revenue Code in
effect for the years in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure, unless otherwise
(continued...)

respectively.[2]  The issues remaining for our consideration are: (1) Whether Dennis J. Kraus (petitioner) was entitled to report income and expenses on a Schedule C, Profit or Loss From Business; (2) whether petitioner is entitled to use cost of goods sold in computing his gross income; (3) whether petitioner is entitled to claim deductions for an office in his home; (4) whether petitioner is entitled to certain deductions claimed on Schedules C; (5) whether petitioners are liable for accuracy-related penalties for negligence under section 6662(b)(1); and (6) whether the burden of proof is on or shifted to respondent under section 7491.

## FINDINGS OF FACT[3]

At the time their petition was filed, petitioners were husband and wife and resided at Huntington Beach, California. Petitioner was a member of the International Brotherhood of Teamsters, Bakery Drivers Local Union No. 952 (Local 952).  He delivered bakery goods provided by the Millbrook Bread division of Interstate Brands Corp. (IBC).  IBC was in the business of

---

[1](...continued)
indicated.

[2] Respondent determined that petitioners were liable for gross valuation misstatement penalties under sec. 6662(h).  On brief, respondent conceded that his determination with respect to that penalty was erroneous and that petitioners are not liable for any penalty under sec. 6662(h).

[3] The parties' stipulated facts are incorporated by this reference.

baking and delivering bakery goods to customers. All petitioner's deliveries of bakery goods were subject to the terms and conditions of a collective bargaining agreement between Local 952 and IBC (union agreement). Petitioner markets and delivers the bakery goods to stores, restaurants, and other institutions.

Petitioner was required to wear a uniform bearing the name "Millbrook Friday Breads", and he was referred to as a "route sales driver" by IBC. He drove an IBC-owned truck, for which IBC provided maintenance and gasoline. Petitioner had no investment of any consequence in facilities or equipment used in the business of baking and delivering bakery products. Normally, he would "punch a time clock" upon arrival and at the conclusion of his workday. After he arrived at IBC, petitioner would load the truck with IBC bakery products which he delivered to IBC's customers in a sales territory that IBC assigned to him.

Petitioner had no ownership interest in the bakery goods he delivered, and all invoices to customers were issued in the name of IBC. IBC controlled any credit terms offered to customers, and petitioner earned a commission for bakery goods delivered, even where the customer failed to pay IBC for the delivered products. For the most part, petitioner's working relationship with IBC was contained in the union agreement between Local 952 and IBC. Under that union agreement, petitioner received a base salary plus commissions that were based on the amount of net

sales of goods delivered to IBC customers.  IBC had the right to discharge petitioner for certain infractions specified in the union agreement.  IBC provided petitioner with paid holidays, vacations, and sick and funeral leave.  In addition, IBC provided petitioner with severance pay benefits and coverage under pension and health benefit plans.  Normally, petitioner's sales route was based on driver seniority.

Petitioner's compensation from his activity was reported to him and the Government by IBC as wages on a Form W-2, Wage and Tax Statement.  For 1997 and 1998, IBC reported wages of $45,700 and $42,940, respectively, to petitioner.  For 1997 and 1998, petitioners deducted $7,965 and $6,443, respectively, for home office expenses.  During the years in issue, one of the bedrooms in petitioner's home was converted into an office which he used for budget tracking and promotional and other work.  IBC did not require petitioner to maintain an office in his home as a condition of employment.

Respondent concedes that if the Court finds that petitioners are not entitled to home office deductions under section 280A, then petitioners are entitled to the following additional deductions on Schedules A, Itemized Deductions, for 1997 and 1998:

| Item | 1997 | 1998 |
|------|------|------|
| Home mortgage interest | $7,791 | $5,266 |
| Real property tax | 600 | 600 |
| DMV renewal fees | 39 | 39 |

Petitioner, on the 1997 and 1998 Federal income tax returns, claimed that he was entitled to report income and expenses on a Schedule C because he was a "statutory employee" in accord with Rev. Rul. 90-93, 1990-2 C.B. 33. Petitioner reported gross receipts of $45,700 for 1997 and $42,940 for 1998 (the amounts reflected on the Forms W-2) on Schedule C of each return. Petitioner, for 1997 and 1998, reduced gross receipts by $6,170 and $6,012, respectively, as cost of goods sold. On each return, petitioner claimed that the cost of goods sold was an inventory adjustment for stale and promotional goods.

On the Schedules C for 1997 and 1998, petitioner claimed the following deductions from gross income:

| Claimed deduction | 1997 | 1998 |
|-------------------|------|------|
| Car and truck expense | $1,890 | $2,295 |
| Legal and professional | 800 | 750 |
| Insurance | 1,200 | -0- |
| Interest | 3,615 | 5,361 |
| Other | 703 | 1,788 |

Respondent disallowed all of petitioner's claimed Schedule C deductions for lack of substantiation.

OPINION

## A.  Section 7491--Burden of Proof

We first consider the questions raised concerning the burden of proof under section 7491.[4]  Petitioners contend that the burden of proof should be placed on respondent under section 7491.  Section 7491(a) generally provides that the burden of proof shall be on the Commissioner with respect to any factual issue relevant to the taxpayer's liability for tax where the taxpayer introduces credible evidence with respect to any such issue.  The burden is not placed on the Commissioner unless a taxpayer has complied with requirements to substantiate the item in issue and has maintained required records and cooperated with reasonable requests by the Commissioner for documents or information.  Sec. 7491(a)(2)(A) and (B)

Respondent contends that petitioners have not complied with the substantiation requirements.  Petitioners contend that their maintenance of computer or machine sensible records was sufficient to meet the section 7491 record requirement.

We find it unnecessary to decide whether the burden of proof is on respondent because we have decided these issues on a preponderance of the evidence.

---

[4] Sec. 7491 is effective for Court proceedings arising in connection with examinations commencing after July 22, 1998.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726.

By determining a penalty under section 6662(a), respondent had the "burden of production * * * with respect to the liability of any individual for any penalty". Sec. 7491(c). Because we have decided that petitioners are not liable for a section 6662 penalty, there is no need to address the question of the burden on that issue.

B. Petitioner's Status as an Employee

Petitioner's status as an employee is important in this case with respect to his ability to claim deductions in arriving at gross income on a Schedule C. Petitioner claims that he is not an employee and relies on sections 3121(d)(3) and 3508(b)(2). In effect, petitioner claims to be self-employed and engaged in a trade or business. Petitioner's entitlement to claim that status depends on whether petitioner is a "statutory" or "common law" employee. The use of the term "common law employee" has evolved from the definition of an "employee" for employment tax purposes in section 3121(d). In particular, section 3121(d)(2) defines an "employee" as "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee".

The term "statutory employee" has been commonly used to refer to employees whose status has been specifically provided for in paragraphs (1), (3), and (4) of section 3121(d). Those paragraphs describe other individuals whose employment status

does not generally depend on the common law principles.  One such category of statutory employee, which is relied on by petitioner, is described in section 3121(d)(3)(A) as follows:  "an agent-driver or commission-driver engaged in distributing meat products, vegetable products, fruit products, bakery products, beverages (other than milk), or laundry or dry-cleaning services, for his principal."  If petitioner can show that he comes within that definition and that he is not a "common law employee" as set forth in section 3121(d)(2), he will be entitled to use Schedule C to report his income and deductions.

Petitioner also relies on section 3508, which affords nonemployee status to certain statutorily defined classes of activities.  In particular, that section applies to real estate agents and direct sellers.  Petitioner contends that he is a direct seller.

Generally, a "direct seller" is defined in section 3508(b)(2)(A) as a person engaged in the trade or business of either selling consumer products in the home as opposed to a permanent retail establishment or delivering or distributing newspapers or shopping news.  Section 3508(b)(2)(B) also requires that to qualify for direct seller status, petitioner must receive renumeration related to sales, rather than to the number of hours worked.  Finally, section 3508(b)(2)(C) requires that petitioner perform services pursuant to a written contract that provides

that he is not treated as an employee with respect to those services for Federal tax purposes.

At the outset, petitioner does appear to come within the rather narrow definition of a "direct seller". Petitioner appears to partially meet the second test in that his remuneration was based, in part, on sales as opposed to hours worked. However, the union contract, which governed petitioner's relationship with IBC, did not provide that he was not to be treated as an employee with respect to those services for Federal tax purposes. Accordingly, petitioner is not entitled under section 3508 to report income and deductions on a Schedule C.

With respect to petitioner's claim that he is not a common law employee and that he is a statutory employee, we first consider whether he is a common law employee. If petitioner falls within the definition of common law employee, he is precluded from relying on section 3121(d)(3)(A). See Ewens & Miller, Inc. v. Commissioner, 117 T.C. 263, 269 (2001). The question of whether an individual is a common law employee is one of fact. Profl. & Executive Leasing, Inc. v. Commissioner, 89 T.C. 225, 232 (1987), affd. 862 F.2d 751 (9th Cir. 1988).

As a guide to deciding common law employee status, courts have used seven factors. In Weber v. Commissioner, 103 T.C. 378,

387 (1999), affd. 60 F.3d 1104 (4th Cir. 1995), relevant factors

and governing legal principles were described as follows:

> (1) The degree of control exercised by the principal
> over the details of the work; (2) which party invests
> in the facilities used in the work; (3) the opportunity
> of the individual for profit or loss; (4) whether or
> not the principal has the right to discharge the
> individual; (5) whether the work is part of the
> principal's regular business; (6) the permanency of the
> relationship; and (7) the relationship the parties
> believe they are creating. Professional & Executive
> Leasing, Inc. v. Commissioner, supra at 232; Simpson v.
> Commissioner, supra at 984-985. No one factor dictates
> the outcome.  Rather, we must look at all the facts and
> circumstances of each case.  Azad v. United States, 388
> F.2d 74, 76 (8th Cir. 1968); Professional & Executive
> Leasing, Inc. v. Commissioner, supra at 232; Simpson v.
> Commissioner, supra at 985; Gamal-Eldin v.
> Commissioner, T.C. Memo. 1988-150, affd. without
> published opinion 876 F.2d 896 (9th Cir. 1989).
>
> The "right-to-control" test is the crucial test to
> determine the nature of a working relationship.
> Matthews v. Commissioner, 92 T.C. 351, 361 (1989),
> affd.  907 F.2d 1173 (D.C. Cir. 1990). The degree of
> control is one of great importance, though not
> exclusive.  Atlantic Coast Life Ins. Co. v. United
> States, 76 F. Supp. 627, 630 (E.D.S.C. 1948).
> Accordingly, we must examine not only the control
> exercised by an alleged employer, but also the degree
> to which the alleged employer may intervene to impose
> control.  Radio City Music Hall Corp. v. United States,
> 135 F.2d 715, 717 (2d Cir. 1943); DeTorres v.
> Commissioner, T.C. Memo. 1993-161. In order for an
> employer to retain the requisite control over the
> details of an employee's work, the employer need not
> stand over the employee and direct every move made by
> that employee.  Professional & Executive Leasing, Inc.
> v. Commissioner, supra at 234; Simpson v. Commissioner,
> supra at 985; Gierek v. Commissioner, T.C. Memo. 1993-
> 642; Atlantic Coast Life Ins. Co. v. United States,
> supra at 630. Also, the degree of control necessary to
> find employee status varies according to the nature of
> the services provided. Reece v. Commissioner, T.C.
> Memo. 1992-335; Pulver v. Commissioner, T.C. Memo.
> 1982-437.

With that guidance, we consider whether petitioner is a common law employee. Generally, petitioner was engaged in driving IBC's truck and representing IBC in the sale and delivery of its products to customers in a specific geographical area. Petitioner was responsible for the relationship with the customer. Petitioner characterizes that relationship as "city salesman, working from a truck" and not mere "deliveryman".

We first consider the degree of IBC's control over petitioner (right to control). That factor is an important one in discerning petitioner's relationship to IBC. See Weber v. Commissioner, supra at 387. The degree of control necessary to find employee status varies with the nature of the services provided by the worker. Id. at 388. "To retain the requisite control over the details of an individual's work, the principal need not stand over the individual; it is sufficient if he has the right to do so. * * * see sec. 31.3401(c)-1(b), Employment Tax Regs." Ewens & Miller, Inc. v. Commissioner, supra at 270.

Respondent contends that under the terms of the union agreement between IBC and Local 952, IBC controls petitioner, by controlling his sales territory, hours of work, credit terms that he can extend to customers, and general course of conduct. In addition, respondent points out that IBC requires petitioner to wear an IBC uniform and provides him with a delivery truck in good working order, gasoline, and maintenance. In addition, IBC

provides petitioner with pension and health benefits, paid sick leave, paid funeral leave, paid holidays and vacations, and severance pay benefits.  Finally, respondent points out that IBC provides petitioner with a Form W-2 (as opposed to a Form 1099-NEC) and that IBC pays petitioner's Social Security and unemployment taxes.

Petitioner counters that he is an agent, as opposed to an employee, because he must work as many hours as it takes to finish the job.  He also points out that he is paid a base salary and commissions on sales, as opposed to an hourly rate.  Finally, he argues that IBC's issuance of a Form W-2 is not dispositive of the characterization of his relationship with IBC.

On the basis of the terms of the union agreement between IBC and Local 952 and the other aspects of petitioner's relationship with IBC, the control factor indicates an employer-employee relationship.

Next we consider respondent's contention that IBC had the right to discharge petitioner for certain specified infractions. We do not find this aspect to be significant because IBC and/or petitioner would each have the option to terminate their relationship irrespective of whether it was one of employment or agency.  Under the union agreement, petitioner could be discharged by IBC if:  (1) He worked on his route after his daily checkout, on holidays or Sundays, or on his day off; (2) he split

a commission; (3) he illegally possessed a controlled substance or was drunk, dishonest, or guilty of gross misconduct or insubordination; (4) he "puts private label products on the bread table"; or (5) his performance is deemed unsatisfactory. However, IBC was required to meet with the union regarding the conduct and to notify the union if petitioner were suspended or discharged.

Although the first, second, and fourth of the above-listed reasons for discharge appear to be unique to the type of work and union agreement, the third and fifth are broad categories of reasons for which IBC could have discharged petitioner. Those categories are of the type that may be associated with an employer-employee relationship. Even though the union contract provided the union's right to be involved in the discharge process, that aspect does not diminish the fact that IBC could discharge petitioner for poor performance.

Lastly, the record reflects that petitioner had little or no investment in facilities or equipment.

The relationship between petitioner and IBC is, in substantial part, governed by the union agreement between petitioner's union and IBC. The terms of the agreement provide for a relationship that is more akin to that of an employer-employee (common law) than that of a self-employed individual or an agent, as contended by petitioner. We therefore hold that

petitioner is a common law employee of IBC.  As a common law employee, petitioner is not entitled to be classified as a statutory employee as that term is described in section 3121(d)(3)(A).

C.  Whether Petitioner Is Entitled to a Deduction in Arriving at Gross Income for Returned Merchandise

In arriving at gross receipts on his Schedule C, petitioner reduced gross receipts by $6,170 and $6,012, for 1997 and 1998, respectively, as "cost of goods sold".  Petitioner relies on section 458 and the case of Hachette USA, Inc. v. Commissioner, 105 T.C. 234 (1995), as support for his claimed reductions to gross receipts.

Section 458 is an elective provision that permits the exclusion from gross income of amounts refunded by the taxpayer upon the return of specified merchandise, i.e., a magazine, paperback, or record, if the taxpayer is on the accrual basis of accounting and in the business of selling such goods.  Respondent contends that petitioner is not entitled to use section 458 because petitioner:  (1) Was not in the business of distributing or selling magazines, paperbacks, or records, (2) was not on the accrual method of accounting, (3) did not own the products delivered, and (4) did not maintain inventories.

We agree with respondent and hold that petitioner is not entitled to any cost of goods sold adjustment for 1997 or 1998. The union agreement expressly provides that petitioner had no

responsibility for stale or unsold goods and that he would receive a full credit (be entitled to retain commissions) for such merchandise.

At trial, petitioner explained that the cost of goods sold adjustment was based on commissions that could have been earned on products that were not sold because they were returned to IBC. We are at a loss to understand how petitioner could have been out-of-pocket for the cost of such items under these circumstances, especially where IBC provided petitioner with a credit for returned merchandise and IBC was required to pay commissions to petitioner even if the customer returned the merchandise.

D.  Petitioner's Entitlement to Home Office Expenses

On the 1997 and 1998 income tax returns, petitioner claimed $7,965 and $6,443, respectively, as home office expenses. Section 280A generally prohibits the deduction of the costs of a taxpayer's residence.  Section 280A(c)(1), however, permits a deduction for the allocable portion of a residence that is regularly and exclusively used as a taxpayer's principal place of business or as a place of business which is used by customers in the normal course of the taxpayer's trade or business.

An employee is entitled to a home office deduction only if such an office is required for the employer's convenience. Frankel v. Commissioner, 82 T.C. 318, 325-326 (1984).  In that

regard, petitioner admitted at trial that his employer did not require him to maintain an office in petitioner's home.

Accordingly, petitioner would be entitled to a home office deduction only if he were found to have a trade or business; i.e., were an independent contractor or self-employed.  Because we have already found that petitioner is an employee of IBC, he is not entitled to claim a deduction for home office expenses.

E.  Petitioner's Entitlement to Certain Schedule C Deductions

On the Schedules C of their 1997 and 1998 income tax returns, petitioners claimed various deductions.  As decided earlier in this opinion, petitioner is not self-employed and thus is not entitled to claim deductions on a Schedule C.  Respondent also contends that petitioners are not entitled to the home office or Schedule C deductions because of their failure to substantiate them.[5]

Petitioner maintained computer records on Quicken which were not accepted by respondent as sufficient to establish the expenses claimed.  In that regard, petitioner apparently did not

---

[5] Because of respondent's concession and because petitioners were found not to be entitled to home office or Schedule C deductions, petitioners are entitled to the following Schedule A deductions:

| Category | 1997 | 1998 | Schedule A |
|---|---|---|---|
| Home mortgage interest | $7,791 | $5,266 | Line 10 |
| Real property taxes | 600 | 600 | Line 6 |
| DMV renewal fees | 39 | 39 | Line 8 |

maintain documents showing that the claimed expenses were incurred or paid.

Petitioners rely on Rev. Proc. 98-25, 1998-1 C.B. 689, which provides for the use of "machine sensible records" like Quicken to satisfy their record keeping requirements. Petitioners' understanding was that the revenue procedure permitted computer records in lieu of other records that are required to be maintained under section 6001. Under Rev. Proc. 98-25, section 11, 1998-1 C.B. at 693, however, taxpayers are not relieved from the responsibility of retaining the hardcopy records from which the computer records were derived; i.e., bills, invoices, etc. received in the ordinary course of business. In that regard, petitioners professed to have only the Quicken printouts. Accordingly, petitioners have failed to show that they are entitled to home office deductions claimed on their Schedule C for 1997 or 1998 in excess of the amounts that respondent has conceded they would be entitled to as Schedule A deductions.

F. Petitioners' Liability for Section 6662 Penalties

Respondent determined that petitioners were liable for penalties under section 6662(a) and (h). Respondent has conceded that petitioners are not liable for a penalty under section 6662(h) but continues to maintain that petitioners are liable for a penalty under section 6662(a) for negligence because they failed to maintain adequate records.

Section 6662 provides for an accuracy-related penalty equal to 20 percent of the underpayment if the underpayment was due to a taxpayer's negligence.  See sec. 6662(a) and (b)(1).  A taxpayer is negligent when he or she fails "'to do what a reasonable and ordinarily prudent person would do under the circumstances.'"  Korshin v. Commissioner, 91 F.3d 670, 672 (4th Cir. 1996) (quoting Schrum v. Commissioner, 33 F.3d 426, 437 (4th Cir. 1994), affg. in part, vacating and remanding in part T.C. Memo. 1993-124), affg. T.C. Memo. 1995-46.

As pertinent here, "negligence" includes the failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and also includes any failure to keep adequate books and records or to substantiate items properly.  See sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

However, a taxpayer may avoid the application of the accuracy-related penalty by proving that he or she acted with reasonable cause and in good faith.  See sec. 6664(c).  Whether a taxpayer acted with reasonable cause and good faith is measured by examining the relevant facts and circumstances, and most importantly, the extent to which he or she attempted to assess the proper tax liability.  See Neely v. Commissioner, 85 T.C. 934 (1985); Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioners maintained computer records for the disputed deduction items. Those items included deductions claimed on Schedules C and separate home office expenses. We decided that petitioners were not entitled to home office deductions. We also decided that petitioners were not entitled to itemized deductions in excess of those respondent conceded. We note that the amount of itemized deductions respondent conceded represented substantially all of the home office deductions petitioners claimed. With respect to petitioners' claimed Schedule C deductions, we found that petitioners were not entitled to them because of the characterization of petitioner's relationship with IBC as an employee, rather than as an agent or self-employed individual.[6] That characterization is based on complex concepts. Under the circumstances, we hold that petitioners acted with reasonable cause and in good faith. Accordingly, petitioners are not liable for a section 6662(a) penalty for 1997 or 1998.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[6] It also appears that a small portion of the deductions petitioners claimed on their Schedules C was conceded by respondent.